IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**GINA MCDONALD-MARSHALL**,                    Civil Case No. 09-1409-KI

             Plaintiff,

        vs.                                                   OPINION AND ORDER

**DOLPHIN SOFTWARE, INC.,** an Oregon
corporation, doing business in Oregon, and
**TIM DORÉ,** an individual,

             Defendants.


      David D. Park
      Mary Ellen Page Farr
      Elliott & Park
      0324 SW Abernethy Street
      Portland, Oregon  97239-4356

          Attorneys for Plaintiff

Scott Oborne
Mark A. Crabtree
Jackson Lewis, LLP
806 Sw Broadway, Suite 400
Portland, Oregon 97205

      Attorneys for Defendants

KING, Judge:

Plaintiff Gina McDonald-Marshall alleges claims of fraudulent inducement, negligent misrepresentation and slander arising out of her employment with defendants Dolphin Software, Inc. and Tim Doré.  Defendants have moved for summary judgment (#13) against plaintiff's First and Second Claims for fraud and misrepresentation, and plaintiff moves for summary judgment (#18) on defendants' Fourth Affirmative Defense.

## BACKGROUND

The crux of plaintiff's complaint, as it relates to the pending cross-motions, is that plaintiff's supervisor, Tim Doré, fraudulently induced her to waive her employment discrimination claims in her severance agreement.  She seeks as damages the value of her released employment claims.  Defendants' fourth affirmative defense is that plaintiff signed a valid release waiving her fraudulent inducement and negligent misrepresentation claims.

Plaintiff's history at Dolphin is turbulent.  She alleges she had to take leave to recover from emotional distress caused by the sexual harassment and retaliation she suffered at the hands of one co-owner, Mark Wysong.  She was hospitalized in August of 2007 for depression and anxiety.  She took medical leave for most of August, in part due to the depression and in part due to an automobile accident.  When she returned to work, she alleges the other co-owner, defendant

Page 2 - OPINION AND ORDER

Doré, changed the conditions of her employment to try and force her to quit. Plaintiff's

depression and anxiety worsened. She went on medical leave again in October.

On or around October 22,[1] Doré told her that a national company, IHS, Inc., was buying

Dolphin and that it required its production managers to have master's degrees, which plaintiff did

not have. He also told her IHS, Inc. was going to replace the entire management team, including

Doré himself, so plaintiff would not have a job after the sale. These statements were not true and

Doré knew they were not true.[2] Finally, he promised he would provide plaintiff with a favorable

reference.

Doré emailed a formal severance offer to plaintiff on October 26. The severance offer

included a promise to pay plaintiff her regular salary and health insurance premiums from

October 26, 2007 through the end of January 2008. The severance agreement provided plaintiff

with 21 days to consider the agreement before signing it. The agreement also provided:

> 1. **Separation from Employment.** I acknowledge that I am being separated from
> employment with Dolphin Software, an Oregon corporation ("Dolphin"), and that
> my last day of employment is October 26, 2007.
>
> . . .
>
> 3. **Release of Claims.** In consideration for this transition package . . . I and my
> successors and assigns forever release and discharge Dolphin, and Dolphin-
> sponsored employee benefit plans in which I participate or participated, and all of
> their respective officers, directors, trustees, employees, contractors, and all of their
> successors and assigns (collectively "Releasees") from any and all claims, actions,

---

[1] Defendants' Concise Statement of Material Facts ("CSMF") asserts this conversation occurred on October 25. Defs.' CSMF ¶ 1. Plaintiff agreed with the date in her Response to the CSMF ¶ 1, but in her own CSMF, she recites the date as October 22. Pl.'s CSMF ¶¶ 11, 15. October 22 is the date she alleges in her Complaint. Complaint ¶ 19. I will use October 22.

[2] Defendants take as true the allegations in plaintiff's complaint for purposes of these cross-motions.

suits, damages, including costs and attorneys' fees (collectively "Claims") that I may have on behalf of myself, known or unknown, or later discovered, which arose prior to the date I sign this Agreement.

This Release includes any claim I might have for re-employment or for additional compensation or benefits (except for unemployment compensation benefits), and applies to claims I might have under either federal or state law dealing with employment, contract, workers' compensation, tort, wage and hour, or civil rights matters, including, but not limited to, applicable civil rights laws, e.g., [list of laws], and any regulations under such laws.

. . .

11. **Entire Agreement Between the Parties.** I understand and agree that this Agreement constitutes the complete understanding between me and Dolphin concerning my transition package, and supersedes all prior agreements, understandings, and past practices.

Doré Decl. Ex. A, at 1-2, 5.

Plaintiff told Doré that she needed time to consider the agreement and consult a lawyer. Doré pressured plaintiff to sign the agreement. Finally, he told her he would box up her personal belongings and send them to her if she did not sign the agreement. Plaintiff signed the severance agreement on November 15, 2007. Dolphin paid plaintiff her regular salary as agreed through the end of January 2008.

After the sale in March 2008, Doré remained as the Chief Operations Officer at the company and the production manager position was filled by employees without master's degrees.

Plaintiff applied for a job with BNSF Railroad and was offered it pending a background check. When BNSF contacted Dolphin, the HR person refused to return calls and refused to provide information without written request. When BNSF finally contacted the HR person, she told them plaintiff was not eligible for rehire due to job performance. BNSF retracted its offer.

The question posed in these cross-motions for summary judgment is narrow:  did plaintiff release her fraud and misrepresentation claims in the severance agreement?

**LEGAL STANDARDS**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The initial burden is on the moving party to point out the absence of any genuine issue of material fact.  Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party.  Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

**DISCUSSION**

I.    Whether Plaintiff Released Her Fraud and Misrepresentation Claims

Defendants argue the severance agreement is unambiguous and the general release includes plaintiff's fraud and misrepresentation claims.  Plaintiff released defendants from "any and all claims, actions, suits, damages . . ., known or unknown, or later discovered, which arose prior to the date I sign this Agreement."  Doré Decl. Ex. A ¶ 3.  The waived claims included "torts."  Defendants suggest plaintiff's fraud and misrepresentation claims arose on October 22, 2007, since they are premised on Doré's statements of October 22, 2007.  Plaintiff signed the agreement on November 15, 2007.  As a result, according to defendants' reading, the severance agreement bars plaintiff's claims.

Plaintiff responds that her fraud and negligent misrepresentation claims did not arise "prior to the date" she signed the severance agreement and, therefore, she did not waive those claims.[3]  She initially argued in her briefing that she did not know the statements Doré made were false until after IHS bought the company in March of 2008 and that, therefore, her claims did not arise until she knew or with reasonable diligence should have learned of the alleged fraud.  See, e.g., Black's Law Dictionary (5th ed., 1979) (defining "arises," for purposes of the statute of limitations, as when a party has the right to seek relief in court); ORS 12.110 (two-year statute of limitations when discovers fraud); Bell v. Benjamin, 232 Or. App. 481, 485-86, 222 P.3d 741 (2009) (discussing when two-year statute of limitations begins to run).

I reject plaintiff's argument that I should look to statute of limitations law to determine when plaintiff's claims arose, whether before or after she discovered the fraud.  Indeed, a fraud claim requires "the hearer's ignorance of [the] falsity" of the speaker's material misrepresentation.  Merten v. Portland Gen. Elec. Co., 234 Or. App. 407, 416, 228 P.3d 623 (2010).  That a fraud claim may arise prior to discovery of the fraud comports with cases upholding releases of "undisclosed fraud."  Lindgren v. Berg, 307 Or. 659, 666, 772 P.2d 1336 (1989) (general release "covers claims of which plaintiffs might not have been aware, even claims for undisclosed fraud").  In other words, although plaintiff did not know about the fraud

---

[3]Plaintiff does not allege that Doré misled her about the release portion of the agreement. Pioneer Resources, LLC v. D.R. Johnson Lumber Co., 187 Or. App. 341, 358, 68 P.3d 233, 243 (2003) (so long as the release itself was not product of fraud, fraud in the inducement does not preclude enforcement of a release).

and misrepresentation claims when she signed the release, the claims nevertheless could have
arisen before her discovery of them.[4]

Nevertheless, both claims require that plaintiff have acted on the false information in
order to have the claim.  Specifically, a claim for fraud requires:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge
> of its falsity or ignorance of its truth; (5) [the speaker's] intent that it should be
> acted on by the person and in the matter reasonably contemplated; (6) the hearer's
> ignorance of its falsity; (7) [the hearer's] reliance on its truth; (8) [the hearer's]
> right to rely thereon; (9) and [the hearer's] consequent and proximate injury.

Merten, 234 Or. App. at 416 (emphasis added) (quoting Wieber v. FedEx Ground Package

System, Inc., 231 Or. App. 469, 480, 220 P.3d 68 (2009)).  Similarly, for a misrepresentation

claim in Oregon, a plaintiff must show "justifiable reliance upon the [false] information."  Onita

Pacific Corp. v. Trustees of Bronson, 315 Or. 149, 157, n.5, 159, 843 P.2d 890 (1992) (en banc)

(quoting Restatement (Second) of Torts, § 522).  At oral argument, plaintiff focused on the fact

that her claims would not have arisen had she not signed the agreement–meaning they arose at

the time she signed the agreement–but the agreement itself waives only those claims that arose

"prior to the date" she signed the agreement.  To examine this argument, I consider the cases

cited by the parties.

Defendants rely on Knutson v. Yamhill County, 130 Or. App. 173, 881 P.2d 156 (1994),

McFarlin v. Gormley, No. CV-06-1594-HU, 2008 WL 410104 (D. Or. Feb. 12, 2008), and Ristau

v. Wescold, Inc., 318 Or. 383, 868 P.2d 1331 (1994).

---

[4]A release of unknown claims is valid when the provision specifically releases such
claims, as this one does.  Patterson v. American Med. Sys., Inc., 141 Or. App. 50, 53, 916 P.2d
881 (1996).

In <u>Knutson</u> the question was whether plaintiff had adequately repudiated her release and settlement under ORS 17.075(3).  The court was not asked to evaluate whether plaintiff had released the claims she subsequently brought and, as a result, the case is not helpful to the analysis.

In contrast, in <u>McFarlin</u>, Judge Hubel reviewed an agreement releasing " all claims known or unknown arising out of Employee's employment with City and the termination of that employment relationship through Employee's resignation." 2008 WL 410104, at * 7.  Judge Hubel concluded, "The Separation/Release Agreement is valid and bars all of plaintiff's state law claims, including the fraud in the inducement claim."  <u>Id.</u>  Judge Hubel found that plaintiff's fraud in the inducement claim arose before or at the same time as the execution of the settlement agreement and, more importantly, that it arose out of plaintiff's employment and termination of that employment, as called for by the release language.

Similarly, in <u>Ristau</u>, the plaintiff brought a fraud in the inducement claim, alleging that defendant's fraudulent statements induced plaintiff to enter into a stock sale agreement.  The stock sale agreement released "any and all claims, . . . whether known or unknown, now existing."  The court found plaintiff's fraud claims "accrued at the time of the 'purchase,' arose at the same time as the execution of the release agreement [and were] 'now existing' at the time that the release agreement was executed." 318 Or. at 388.

The difference in the release language in these cases is minimal but meaningful.  While plaintiff's release covers "any and all claims . . . which arose prior to the date I sign this Agreement," <u>Ristau</u>'s released all claims "now existing" and <u>McFarlin</u>'s released all claims "arising out of Employee's employment . . . through Employee's resignation." Defendants

acknowledge that <u>Ristau</u> stands for the proposition that a fraud claim "arises" at the time of the detrimental reliance, which occurred here <u>at the time</u> plaintiff signed the agreement.  <u>See</u> Defs.' Reply at 3.  Therefore, plaintiff did not release these fraud claims as they did not "ar[i]se <u>prior</u> to the date [she] sign[ed] this Agreement."  (Emphasis added).  Defendants attempt to minimize any differences in the language, asserting that this release "extends to claims arising through the time of the release."  Defs.' Reply at 3-4.  Contrary to defendants' assertion, however, the release clearly extends only to claims arising <u>prior</u> to the date plaintiff signed the release.

Defendants argue that a merger clause negates the reliance element of the fraud and misrepresentation claims.  In <u>McFarlin</u>, the merger clause read that plaintiff "does not rely and has not relied upon any representation or statement not set forth herein . . . with regard to the subject matter, basis or effect of this Agreement."  2008 WL 410104, at *5.  Here, in contrast, the language reads,

> 11. **Entire Agreement Between the Parties.**  I understand and agree that this Agreement constitutes the complete understanding between me and Dolphin concerning my transition package, and supersedes all prior agreements, understandings, and past practices.

Doré Decl. Ex. A, at 5.  The language of the merger clause at issue here is not nearly as broad as the language contained in <u>McFarlin</u>'s agreement.  Plaintiff consented to the fact that the agreement captured her understanding regarding her severance and benefits; it did not speak to the reasons for entering the severance agreement.

In short, I must consider the terms of the release.  After all "[a] release, as a species of contract, is subject to the principles of contract construction and interpretation."  <u>Pioneer Resources, LLC v. D.R. Johnson Lumber Co.</u>, 187 Or. App. 341, 361, 68 P.3d 233 (2003) (citing

Ristau, 318 Or. at 387).  The terms of the release are unambiguous and I must enforce the release

according to its terms.  Ristau, 318 Or. at 387 (quoting OSEA v. Rainier School Dist. No. 13,

311 Or. 188, 194, 808 P.2d 83 (1991)).  Accordingly, plaintiff did not release her fraud or

misrepresentation claims by signing this release as those claims did not arise until she signed the

agreement.  The agreement releases only those claims that arose prior to the date plaintiff signed

the agreement.

II.    Whether Plaintiff Ratified the Release and is Estopped from Bringing her Claims

Alternatively, defendants argue, once plaintiff learned of the fraud, she ratified the release

by keeping the compensation.  Defendants rely on the following cases:  Cumberland & Ohio Co.

of Texas, Inc. v. First Am. Nat'l Bank, 936 F.2d 846, 850 (6th Cir. 1991); Grillet v. Sears,

Roebuck & Co., 927 F.2d 217 (5th Cir. 1991); Kobatake v. E.I. Dupon de Nemours & Co., 162

F.3d 619, 627 (11th Cir. 1998); Rickman v. Cone Mills Corp., 659 F. Supp. 412 (D. Kan. 1987);

and American Demolition, Inc. v. Hapeville Hotel Ltd. Partnership, 413 S.E.2d 749, 751 (Ga.

App. 1991).

Plaintiff argues I should not consider this argument since defendants failed to raise it in

their opening brief.  Defendants raise ratification as their Ninth Affirmative defense, but failed to

argue it in their opening brief and plaintiff has not moved against that defense.  I will not rule on

this issue as it was raised in defendants' reply and no party has moved on the Ninth Affirmative

defense.

I note, however, that defendants have failed to cite any Oregon cases and that the cases

they do cite are largely inapposite.  In all but two of the cases, the plaintiffs were attempting to

rescind or avoid the release and sue on the underlying liability, something plaintiff is not

attempting to do here.  See Cumberland, 936 F.2d 846 (plaintiff was estopped from avoiding the release on the basis of duress); Grillet, 927 F.2d 217 (plaintiff could not argue release was ineffective as a result of misrepresentation because she ratified it); Kobatake, 162 F.3d 619 (court concluded plaintiff could not rescind the release).  Furthermore, the Tenth Circuit reversed the district court's decision in Rickman v. Cone Mills Corp., concluding instead that the plaintiff could keep the settlement, waive rescission and sue for fraud, as plaintiff is doing here.  893 F.2d 1340 (10th Cir. 1989) (unpub.); see Rickman, 129 F.R.D. 181, 183 (D. Kan. 1989) (summarizing opinion on appeal).

That leaves American Demol., Inc., a case from the Georgia Court of Appeals.  Georgia law provides that:

> In an action for fraud, "[i]f the defrauded party has not rescinded but has elected to affirm the contract, he is relegated to a recovery in contract and the merger clause will prevent his recovery.  This result obtains because where the allegedly defrauded party affirms a contract which contains a merger or disclaimer provision and retains the benefits, he is estopped from asserting that he relied upon the other party's misrepresentations and his action for fraud must fail."

American Demol., Inc., 413 S.E.2d at 751 (citations omitted).  After a cursory review of Oregon law, it appears that Oregon does not follow this theory.  For example, in the case of a real estate transaction induced by fraud, the purchaser has the option of rescinding the purchase and suing to obtain the consideration he gave or of affirming the sale and suing for damages.  Milton v. Hare, 130 Or. 590, 598-99, 280 P.511 (1929); Matsuura v. Alston & Bird, 166 F.3d 1006, 1008, n.4 (9th Cir. 1999) (discussing split of authority and describing reasons why a court should not limit plaintiffs to rescission, including that they may be prejudiced by delay).

**CONCLUSION**

For the foregoing reasons, defendants' Motion for Summary Judgment (#13) is denied and plaintiff's Cross-Motion for Summary Judgment (#18) is granted.  Plaintiff is entitled to judgment on defendants' Fourth Affirmative defense.

IT IS SO ORDERED.

Dated this _____16th_____ day of July, 2010.

                    ___/s/ Garr M. King_____
                    Garr M. King
                    United States District Judge